IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TONI BAPTISTA,

        Plaintiff,

    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

No. CV 07-3053-MO

OPINION AND ORDER

**MOSMAN, J.,**

    Plaintiff Toni Baptista seeks judicial review of the final decision of the Commissioner of

the Social Security Administration finding her not disabled and denying her application for

Supplemental Security Income ("SSI") under Title II of the Social Security Act.

    This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. §

405(g). Following thorough and careful review of the record, the court REVERSES the final

decision of the Commissioner and REMANDS this matter for further proceedings consistent

with this opinion.

PAGE 1 - OPINION AND ORDER

## BACKGROUND

### I.    Administrative History

Ms. Baptista filed her application for SSI on July 16, 2003.  (A.R. 61, 79.)[1]  She alleges

disability since June 1, 2000, due to a traumatic brain injury,[2] anxiety, depression, asthma,

migraines, stomach pain (due to a cyst on her liver), positional vertigo, back and neck pain

(scoliosis), hypertension, and a limited IQ.  (A.R. 64, 94, 105, 111, 114; Pl's. Mem. (#11) at 1-2.)

The application was denied initially and on reconsideration.  (A.R. 27, 40.)  An Administrative

Law Judge ("ALJ") held a hearing on October 25, 2005.  (A.R. 405, 421.)  At the hearing, Ms.

Baptista was represented by an attorney.  (A.R. 405, 421.)  Ms. Baptista, her neighbor Joey

Winters, medical expert ("ME") Dr. Susan Dragovich, and vocational expert ("VE") Frances

Summers testified at the hearing.  (A.R. 421.)

The ALJ issued a decision on February 27, 2006, in which he found that Ms. Baptista was

not entitled to receive benefits.  (A.R. 24.)  That decision became the final decision of the

Commissioner on May 21, 2007, when the Appeals Council denied Ms. Baptista's request for

review.  (A.R. 6.)  This appeal followed.

### II.    Ms. Baptista's Testimony

At the time of the hearing, Ms. Baptista was a 46-year-old woman, living alone.  (A.R.

424-25.)  She left school during the tenth grade, received mostly D and F grades, and was

enrolled in a program called "continuation," which appears to be a special education program,

---

[1] Citations "A.R." refer to indicated pages in the official transcript of the administrative record filed on February 27, 2008 (#10).

[2] The traumatic brain injury appears to be due to a motor vehicle accident on August 13, 2002, therefore this cannot be the basis for disability starting June 1, 2000.  (A.R. 226, 244, 287.)

although she has said that she was not in special education classes.  (A.R. 225, 243, 425-26.)

Ms. Baptista has worked in data entry, and as a waitress, cashier, and house cleaner.  (A.R. 65,

73, 426-27.)

## DISCUSSION

### I.    <u>Standards</u>

The initial burden of proof rests on a claimant to establish disability.  *Roberts v. Shalala*,

66 F.3d 179, 182 (9th Cir. 1995).  The claimant must demonstrate the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which . . . has lasted or can be expected to last for a continuous period of not less

than 12 months."  42 U.S.C. § 423(d)(1)(A).

The Commissioner must conduct a five-step sequential inquiry to determine whether a

claimant is disabled within the meaning of the Act.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987);

20 C.F.R. § 404.1520.  Each step is potentially dispositive.  At step one, the claimant is not

disabled if the Commissioner finds he is engaged in substantial gainful activity.  *Yuckert*, 482

U.S. at 140; 20 C.F.R. § 404.1520(a)(4)(i).  At step two, the claimant is not disabled if he has no

"medically severe impairment or combination of impairments."  *Yuckert*, 482 U.S. at 140-41; 20

C.F.R. § 404.1520(a)(4)(ii).  At step three, the claimant is disabled if his impairments meet or

equal "one of a number of listed impairments that the [Commissioner] acknowledges are so

severe as to preclude substantial gainful activity."  *Yuckert*, 482 U.S. at 141; 20 C.F.R. §

404.1520(a)(4)(iii).

If the inquiry proceeds to step four, the Commissioner must assess the claimant's residual

functional capacity ("RFC"), which is an assessment of the sustained, work-related activities the

PAGE 3 - OPINION AND ORDER

claimant can do on a regular and continuing basis.  20 C.F.R. § 404.1545(a); *see also* Social

Security Ruling ("SSR") 96-8p.  At step four, the claimant is not disabled if the Commissioner

finds he retains the RFC to perform his past work.  *Yuckert*, 482 U.S. at 142; 20 C.F.R. §

404.1520(a)(4)(iv).  At step five, the Commissioner must determine whether the claimant is able

to do any other work that exists in the national economy.  *Yuckert*, 482 U.S. at 142; 20 C.F.R. §

404.1520(a)(4)(v).  Here the burden shifts to the Commissioner to show that a significant number

of jobs exist in the national economy that the claimant can do.  *See Yuckert*, 482 U.S. at 141-42;

*see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the Commissioner meets this

burden, the claimant is not disabled.  *Tackett*, 180 F.3d at 1098-99.

A district court must affirm the Commissioner's decision if it is based on proper legal

standards and the findings are supported by substantial evidence in the record as a whole.

42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004);

*Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).  "Substantial evidence means more than

a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

Cir. 1995).  If the "evidence is susceptible to more than one rational interpretation," one of which

supports the Commissioner's final decision, the district court must uphold the Commissioner's

decision.  *Andrews*, 53 F.3d at 1039-40; *Batson*, 359 F.3d at 1193; *Thomas v. Barnhart*, 278 F.3d

947, 954 (9th Cir. 2002).

## II.   The ALJ's Decision

The ALJ found that Ms. Baptista has not engaged in substantial gainful activity at any

time relevant to this decision.  (A.R. 29.)  He found that the following impairments, in

combination, are severe: "major depression, anxiety disorder, panic disorder, agoraphobia, borderline intellectual functioning, a history of alcohol abuse, asthma, chronic obstructive pulmonary disease, a history of vertigo, degenerative disc disease, a small liver cyst, gastritis, a history of headaches, fatty liver, and carpal tunnel syndrome." (A.R. 29.) The ALJ found that these impairments did not meet or equal a disorder listed in the Commissioner's regulations, and assessed Ms. Baptista's RFC:

> [T]he claimant has the residual functional capacity to occasionally lift and carry [twenty] pounds and frequently lift and carry ten pounds. She cannot do prolonged sitting, walking, or standing. When sitting, she needs the occasional opportunity to stand. She can walk for one-half a block at a time. When standing, she needs the occasional opportunity to get off her feet. She cannot climb or balance. She can occasionally stoop, kneel, crouch, crawl, and reach. She can have no more than limited exposure to wetness, humidity, vibration/jarring, extreme cold, fumes, dust, and dangerous hazards. She is limited to simple tasks and cannot do detailed or complex tasks. She has moderate limits on sustaining extended concentration and attention. She cannot work in ongoing service to the general public but can have occasional public contact. She can be in the vicinity of the public. She cannot work with unanticipated or rapid changes in work tasks or environment.

(A.R. 30.) The ALJ applied these findings to his analysis.

The ALJ found that Ms. Baptista could no longer perform her past relevant work at step four. (A.R. 37.) At step five, the ALJ found that Ms. Baptista could perform jobs that exist in significant numbers in the national economy. (A.R. 38.) Therefore, the ALJ found Ms. Baptista "not disabled" and ineligible for SSI benefits. (A.R. 39.)

Ms. Baptista disputes the ALJ's step three finding that she does not equal a listed impairment under section 12.05, *Mental Retardation*, or meet sections 11.18, *Cerebral Trauma*, and 12.02, *Organic Mental Disorders*. (Pl's. Mem. (#11) at 2.) She also disputes the ALJ's step five finding that there are jobs in the economy that she can perform. Ms. Baptista argues that she

cannot perform the listed jobs due to her vertigo, scoliosis, asthma, hypertension, depression, anxiety, obesity, and low IQ.  (*Id.* at 6.)

## III.    **Listed Impairment or Equivalence**

Ms. Baptista contends the ALJ erred by failing to find that her combined impairments equal Listing 12.05 or satisfy the regulatory criteria for Listings 11.18 and 12.02.  She argues that greater weight should have been given to the IQ related testimony of the examining physicians than to the hearing testimony of the non-examining ME.  (Pl's. Mem. (#11) at 4.)

The claimant has the burden of proving that she meets or equals the criteria for a listed impairment based on medical evidence.  *Sullivan v. Zebley,* 493 U.S. 521, 531 (1990); *Tackett*, 180 F.3d at 1100; 20 C.F.R. § 404.1526.  A claimant's description of symptoms is insufficient. 20 C.F.R. § 404.1529(b); SSR 86-8 at 3-4.

If the claimant's medical condition is listed in the Listing of Impairments and the medical findings satisfy all the criteria of the listing, the claimant meets the listing.  20 C.F.R. § 404.1525(c)(3).  If the claimant's medical condition is not listed, but the medical findings are at least as severe as the criteria for the listed impairment that is most like the claimant's condition, it equals the listing.  *Id.* § 404.1526(a).  A claimant's medical condition may also equal a listing if the claimant does not exhibit one or more of the findings specified, as long as the claimant has other findings related to the impairment that are at least of equal medical significance to the required criteria.  *Id.* § 404.1526(b)(1).  Thus, to equal a listing, the claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan*, 493 U.S. at 531 (citing 20 C.F.R. § 416.926(a); SSR 83-19 at 91).

A.    *Listing 12.05, Mental Retardation*

Ms. Baptista argues that the ALJ improperly rejected her IQ scores from Dr. Donnell and

Dr. Cole, which caused him to wrongly state that she does not equal the listing criteria for

12.05(C).  (Pl's. Mem. (#11) at 5.)

### 1.    The Requirements of Listing 12.05

To meet or equal Listing 12.05, *Mental Retardation*, a claimant must have "significantly

subaverage general intellectual functioning with deficits in adaptive functioning initially

manifested during the developmental period; i.e., the evidence demonstrates or supports onset of

the impairment before age 22."  20 C.F.R. Pt. 404, Subpt. P, App.1.  To meet the required level

of severity, a claimant must meet the requirements of one of four subparts, A, B, C, or D.

Adaptive functioning includes a "person's effectiveness in areas such as social skills,

communication, and daily living skills, and how well [a] person meets the standards of personal

independence and social responsibility expected of his or her age by his or her cultural group."

*Heller v. Doe ex rel. Doe*, 509 U.S. 312, 329 (1993) (citation omitted).

The ALJ found that Ms. Baptista did not meet or equal the Listing for 12.05 because she

"functions well generally and can read and do some mathematics" and thus determined that her

"level of deficit in adaptive functioning [does not] warrant . . . the diagnosis of mental retardation

on evaluation under 12.05 of the listings."[3]  (A.R. 29.)  Plaintiff contends that the ALJ

improperly rejected the IQ scores reported by Dr. Donnell and Dr. Cole, however Ms. Baptista's

IQ was not the question before the ALJ.  Instead, the ALJ needed to determine whether Ms.

---

[3] Because the ALJ found that Ms. Baptista did not meet the "deficits in adaptive
functioning" requirement of 12.05, he never reached the question of whether any deficit was
manifested before the age of twenty-two.

Baptista had the required deficits in adaptive functioning, which he adequately answered based on substantial medical evidence.

### 2.    The Medical Evidence

The ALJ is responsible for resolving conflicts in the medical evidence. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  The opinion of a treating physician is accorded the most weight, while the opinion of an examining physician is entitled to greater weight than that of a nonexamining physician. *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995).  In rejecting the contradicted opinion of a treating or examining physician, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31 (citations omitted).  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* at 831.

Dr. Donnell and Dr. Cole are examining physicians—as opposed to treating physicians—because their only interaction with Ms. Baptista were the comprehensive psychological examinations they conducted. *See id.* at 830 (defining different categories of physicians for the purpose of assessing medical evidence in social security benefits cases). Hearing ME Dr. Dragovich is a nonexamining physician because her opinion was based on the record and on observations made during the hearing, rather than on a personal examination of Ms. Baptista. *See id.*

Dr. Donnell administered the Wechsler Adult Intelligence Scale – III ("WAIS-III") test, which measures IQ.  (A.R. 230-33.)  The results indicated that Ms. Baptista's verbal scale IQ is 65, her performance scale IQ is 76, and her full scale IQ is 67.  (A.R. 230, 231.)  Dr. Donnell

stated that this indicates that Ms. Baptista meets the Oregon criteria for mild mental retardation. (A.R. 234-35, 239.) Dr. Donnell further found that Ms. Baptista had marked restrictions in her activities of daily living, social functioning, and concentration, persistence, or pace. (A.R. 237, 238.)

Dr. Cole also administered the WAIS-III test to measure Ms. Baptista's IQ. (A.R. 246.) The results indicated that Ms. Baptista's verbal scale IQ is 69, her performance scale IQ is 87, and her full scale IQ is 76. (*Id.*) Dr. Cole stated that these scores, along with the results of his other tests and his conversation with Ms. Baptista, indicated that she had borderline intellectual functioning. (A.R. 249.) Dr. Cole did not rate Ms. Baptista's restrictions in her activities of daily living or social functioning. However, Ms. Baptista told Dr. Cole that she showers, washes her dishes daily, vacuums, sweeps, mops, and does laundry once a week, cooks three to four times a week, has a drivers license, and shops two to three times a month. (A.R. 245-46.) She also indicated that she enjoys seeing her friends once a week. (A.R. 246.) He noted that "her overall pace on tasks, although generally slow, ranged from average to below average," and that she had "[s]ome problems with attention and concentration." (A.R. 249.) He further stated that she has only mild deficits in speech and language and has moderately deficient memory capabilities. (*Id.*) Dr. Cole believes that Ms. Baptista can work, but that she should be assigned simple, repetitive tasks, and receive close supervision. (*Id.*)

Dr. Dragovich testified at the hearing that she had read both Dr. Donnell's and Dr. Cole's reports, along with the rest of the record, and found the two reports inconsistent. (A.R. 447.) Dr. Dragovich stated that she believed Dr. Cole's diagnosis of borderline intellectual functioning was better supported by the record than Dr. Donnell's diagnosis of mild mental retardation. (A.R.

PAGE 9 - OPINION AND ORDER

446.)  She also found Dr. Cole's discussion of Ms. Baptista's functional abilities was more

consistent with the record than Dr. Donnell's findings of marked impairments.  (A.R. 447.)  Dr.

Dragovich found no impairment for activities of daily living, mild impairment of social

functioning, and moderate impairment for concentration, persistence, or pace.  (A.R. 448-49.)

The ALJ must resolve conflicts in the medical evidence.  *Edlund*, 253 F.3d at 1156.

Although the verbal scale IQ scores in both tests were very similar, Dr. Donnell and Dr. Cole

developed different diagnoses and the ALJ had to resolve that conflict.  The doctors also

disagreed on Ms. Baptista's deficits in adaptive functioning.  In rejecting the contradicted opinion

of a treating or examining physician, the ALJ must provide "specific and legitimate reasons that

are supported by substantial evidence in the record."  *Lester,* 81 F.3d at 830-31 (citations

omitted).  The ALJ's determination that Ms. Baptista has borderline intellectual functioning,

rather than mild mental retardation, is supported by Dr. Cole's diagnosis, Dr. Dragovich's

testimony, and by state agency psychologist Paul Rethinger's evaluation.  (A.R. 249, 446, 257.)

The ALJ also indicated that he gave Dr. Cole's evaluation weight because it was "consistent with

[Ms. Baptista's] general good functioning as evidenced by her activities of daily living and the

fact that she was able to sustain employment for many years . . . lived with a friend and was able

to sustain friendships."  (A.R. 33.)

These are "specific and legitimate reasons" that are supported by substantial evidence in

the record, therefore the ALJ's disagreement with Dr. Donnell's report was not erroneous.  Both

Dr. Cole and Dr. Dragovich's opinions support the ALJ's determination that Ms. Baptista's

deficits in adaptive functioning do not equal a Listing under 12.05.

**B.**    ***Listing 11.18 Cerebral Trauma/12.02 Organic Mental Disorders***

The ALJ does not address whether or not Ms. Baptista meets the Listing for 11.18,

*Cerebral Trauma*.  A listing under 11.18 is to be analyzed under the provisions of 11.02

*Epilepsy–convulsive epilepsy*, 11.03 *Epilepsy–non-convulsive epilepsy*, 11.04 *Central Nervous*

*System Vascular Accident*, or 12.02 *Organic Mental Disorders*, as applicable.  20 C.F.R. Pt. 404,

Subpt. P, App. 1.  Ms. Baptista has argued, and the court agrees, that 12.02 is the appropriate

listing under which to analyze Ms. Baptista's claimed traumatic brain injury.

Listing 12.02 applies to "[p]sychological or behavioral abnormalities associated with a

dysfunction of the brain." *Id.*  To meet the listing, the claimant must present "[h]istory and

physical examination or laboratory tests" that "demonstrate the presence of a specific organic

factor judged to be etiologically related to the abnormal mental state and loss of previously

acquired functional abilities." *Id.*  To meet the required level of severity a claimant must meet

the requirements of both subparts A and B, or the requirements of subpart C.  *Id.*  There is no

need to analyze severity, however, because Ms. Baptista has not met the basic requirements of a

12.02 listing; she has failed to demonstrate the "presence of a specific organic factor" related to

an "abnormal mental state [or the] loss of previously acquired functional abilities."

Ms. Baptista was in a motor vehicle accident on August 13, 2002.  (A.R. 289.)  The

emergency room reported that she had a laceration on her forehead.  (*Id.*)  A non-contrast CT

scan was done due to Ms. Baptista's head pain and forehead laceration; there was no evidence of

mass, mass effect, intracranial hemorrhage, cerebral edema, or skull fractures.  (A.R. 299.)  There

is no further medical evidence in the record regarding Ms. Baptista's head injury.  Without

medical evidence of organic brain damage, Ms. Baptista cannot meet or equal Listing 12.02.  The

ALJ's failure to discuss Listing 11.18/12.02 is therefore harmless. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054-55 (9th Cir. 2006) (stating that harmless error standard applies).

IV.    **The ALJ's RFC Determination**

Ms. Baptista challenges the ALJ's rejection of her treating physician's finding that she is limited to sedentary work. (Pl's. Mem. (#11) at 6.) She also contends that the ALJ's RFC states that she can do light work, but that his hypothetical at step five precludes light work as defined by the Medical Vocational Guidelines. (*Id.* at 6-7.) Finally, Ms. Baptista argues that the ALJ failed to consider her obesity in the determination of her RFC. (*Id.* at 7.)

A.    *Sedentary Work*

A treating source is a physician "who has provided the claimant with medical treatment or evaluation and either has, or has had, an ongoing treatment relationship with the claimant." *Benton v. Barnhart*, 331 F.3d 1030, 1038 (9th Cir. 2003) (citing 20 C.F.R. § 404.1502). "A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." *Edlund*, 253 F.3d at 1153 (citing SSR 96-2p). When not contradicted by another doctor, a treating doctor's opinion may only be rejected for clear and convincing reasons. *Lester*, 81 F.3d at 830. However, an "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (citing *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)).

Dr. Nehren qualifies as a treating physician because she has provided Ms. Baptista with medical treatment and evaluation at the Klamath Open Door Family Practice for several years.

PAGE 12 - OPINION AND ORDER

(A.R. 340-69.)  In September 2005 Dr. Nehren completed a Physical Residual Function Capacity Report and checked a series of boxes indicating that Ms. Baptista could lift a maximum of ten pounds frequently, stand and/or walk for less than two hours in an eight-hour work day, sit less than six hours in an eight-hour work day, and had a limited ability to push or pull with her lower extremities.  (A.R. 400.)  She reported that Ms. Baptista could never climb or balance, could only stoop, kneel, crouch, crawl, or reach in all directions occasionally, but could handle, finger, and feel frequently.  (A.R. 400-01.)  Dr. Nehren also noted that Ms. Baptista should avoid occasional exposure to wetness, humidity, and vibrations, and all exposure to extreme cold or heat, fumes, odors, dusts, and gases, and hazardous machinery.  (A.R. 401.)

The ALJ's RFC determination adopts nearly all of these limitations.  (A.R. 30.)  The only differences are that the ALJ found that Ms. Baptista could lift and carry twenty pounds occasionally and ten pounds frequently and could have only limited exposure to extreme cold, fumes, dust, and dangerous hazards.  (A.R. 30.)  Ms. Baptista has challenged only her ability to lift twenty pounds, (Pl's. Mem. (#11) at 6-7), which qualifies her for light, rather than sedentary, work, *see* 20 C.F.R. § 404.1567.

In this case, the ALJ indicated that he found some of the limits imposed by Dr. Nehren not to be supported by her treatment notes.  (A.R. 36.)  In fact, there is nothing in Dr. Nehren's treatment notes that goes to the question of how much weight Ms. Baptista can lift.  The ALJ was under no obligation to accept Dr. Nehren's brief, conclusory, unsupported opinion, therefore, his partial rejection of her findings was not erroneous.  *See Thomas*, 278 F.3d at 957.  Furthermore, the fact that Dr. Nehren's opinion was unsupported by her treatment notes is a clear and convincing reason for the ALJ to reject her findings.

PAGE 13 - OPINION AND ORDER

B.    *Light Work*

Ms. Baptista argues that the ALJ's hypothetical conflicts with his finding that she can do

light work, because the hypothetical precludes light work.  (Pl's. Mem. (#11) at 6-7.)  However,

the ALJ stated that Ms. Baptista's "ability to perform all or substantially all of the requirements of

[light] work has been impeded by additional limitations."  (A.R. 38.)  Therefore there is no

finding that Ms. Baptista can do all "light work" and no inconsistency between the ALJ's finding

and the hypothetical.

C.    *Obesity*

Ms. Baptista did not raise the issue of her obesity in her application for benefits or at the

hearing before the ALJ.  (A.R. 64, 423-467.)  There is some discussion of weight gain in

conjunction with the diagnosis of liver cysts, but severe obesity is not discussed.  (A.R. 431.)

Ms. Baptista's doctors have noted weight gain, but again, severe obesity and its effect on her

health was not discussed.  (A.R. 343, 364, 365, 368.)  In the Physical Residual Function Capacity

Report, Ms. Baptista's treating physician did not note obesity as a limitation.  (A.R. 400-01.)  An

ALJ is not required to account for the effects of a medical impairment that the claimant has not

raised and that is not readily apparent from the record.  *See Roberts*, 66 F.3d at 182 (the burden

of proof rests on the claimant to establish disability); *see also Adkins v. Comm'r*, 2008 WL

4078779, *9 n.121 (D. Ariz. 2008).  Therefore, the failure to include Ms. Baptista's obesity in the

RFC determination was not error.

V.    <u>The Vocational Expert</u>

Ms. Baptista argues that the jobs listed by the VE do not meet the mental and physical

limitations listed in the ALJ's hypothetical or those listed by Ms. Baptista's physicians.  (Pl's.

Mem. (#11) at 9.)  Specifically, Ms. Baptista states that the reasoning level required of all three

jobs does not match the hypothetical and that the jobs would expose Ms. Baptista to fumes and

dust, which would exacerbate her asthma.  (Pl's. Mem. (#11) at 8-9.)

At step five, the burden shifts to the Commissioner to show that a significant number of

jobs exist in the national economy that the claimant can do despite her recognized impairments.

*See Yuckert*, 482 U.S. at 141-42; *see also Tackett*, 180 F.3d at 1098.  The Commissioner may

satisfy this burden through the testimony of a VE.  *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th

Cir. 1988) (citation omitted).  Before relying on a VE's testimony regarding the requirements of a

particular job, the ALJ must inquire whether the testimony conflicts with the Dictionary of

Occupational Titles ("DOT") and obtain a reasonable explanation for any apparent conflict.

*Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing SSR 00-4p).  A VE provides

evidence regarding the requirements of a job when she states that a claimant qualifies for a

particular job.  *Id.* at 1153 n.18.

In this case, the ALJ created two hypotheticals for the VE.  The first included the

following limitations: forty-six-year-old female with nine years of education, past work

experience includes data entry, waitress, and cashier, limited to simple tasks without extended

concentration or attention, no ongoing service to the general public, no unanticipated or rapid

changes in work tasks or environment, and no concentrated dust or fumes.  (A.R. 457.)  The VE

testified that the following jobs met these requirements: assembler of small products, blind stitch

machine operator, and marker II.  (A.R. 458.)  The second hypothetical added the following

limitations: lifting and carrying limited at ten pounds frequently and twenty pounds occasionally;

no prolonged sitting, walking, or standing, walking at most a half a block at a time; no climbing

PAGE 15 - OPINION AND ORDER

or balancing; limited to occasionally stooping, kneeling, crouching, crawling, and reaching; and avoiding areas that are wet, humid, jarring, extremely cold, or have fumes, dust, or dangerous hazards. (A.R. 458-59.) The VE testified that assembler of small products was still applicable, as was assembler of optical, and decorator. (A.R. 459-60.) The ALJ determined that Ms. Baptista had the RFC to perform the following jobs: assembler of small products, blind stitch machine operator, and marker II.[4] (A.R. 38.)

Ms. Baptista's representative did not argue that the VE's testimony conflicted with the DOT at the hearing, but did request an additional week to respond to the VE's job related testimony. (A.R. 461-62.) It is unclear from the administrative record what supplemental briefing, if any, was provided to the ALJ after the hearing. For the purposes of this opinion, I will assume that the ALJ received Attachment 1 to Ms. Baptista's memorandum requesting that the Appeals Council review the ALJ's decision. (*See* A.R. 417-18.) The Attachment states in relevant part that limiting Ms. Baptista's exposure to fumes, dust, vibration, and jarring is not possible under the DOT definitions of the three jobs the ALJ found Ms. Baptista could perform. (*Id.* (citing DOT 739.687-030 Assembler, Small Products II *available at* http://www.occupationalinfo.org/73/739687030.html; DOT 786.682-046 Blindstitch-Machine Operator (garment) *available at* http://www.occupationalinfo.org/78/786682046.html; DOT

---

[4] The record is unclear as to why the ALJ determined that Ms. Baptista could perform the jobs the VE listed for the first hypothetical rather than those from the second hypothetical, which contained all of the limitations from the RFC. Failing to ensure that these jobs met the RFC was error. However, the error was harmless because assembler of small products fit both hypotheticals. The VE testified that there are about half a million assembler of small products jobs in the national economy and 12,500 in Oregon. (A.R. 458.) This is sufficient to meet the ALJ's burden of demonstrating that the claimant can do a significant number of jobs that exist in the national economy. *See* 20 C.F.R. § 404.1566; *see also Yuckert*, 482 U.S. at 141-42.

920.687-126 Marker II *available at* http://www.occupationalinfo.org/92/920687126.html).)  It

further states, "[t]he claimant also fails [General Education Development ("GED")]

requirements."  (*Id.*)

All three jobs identified by the ALJ are listed as unskilled and require an 02 Level of

Reasoning Development[5] and 01 Level  Mathematical[6] and Language[7] Development.  (A.R. 417-

18.)  Ms. Baptista states that "even the most limited requirement in the [General Education

Development ("GED") of the Dictionary of Occupational Titles ("DOT")] falls below [her level

of] cognitive function."  (Pl's. Mem. (#11) at 9.)  I take this objection to mean that Ms. Baptista

believes that her level of cognitive function, as described in the hypotheticals, is below that

required to work in the jobs listed by the ALJ (i.e. that the mental requirements of the job are

*above* her level of cognitive function).

Ms. Baptista has not challenged the ALJ's failure to ask the VE whether her testimony

conflicted with the DOT.  I am raising the issue sua sponte because this error came to my

---

[5] "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions.  Deal with problems involving a few concrete variables in or from standardized situations."  Dictionary of Occupational Titles (4th ed.) App. C, *available at* http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM.

[6] "Add and subtract two digit numbers.  Multiply and divide 10's and 100's by 2, 3, 4, 5. Perform the four basic arithmetic operations with coins as part of a dollar. Perform operations with units such as cup, pint, and quart; inch, foot, and yard; and ounce and pound."  Dictionary of Occupational Titles (4th ed.) App. C, *available at* http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM.

[7] "Reading: Recognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute.  Compare similarities and differences between words and between series of numbers.  Writing: Print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses.  Speaking: Speak simple sentences, using normal word order, and present and past tenses."  Dictionary of Occupational Titles (4th ed.) App. C, *available at* http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM.

attention while analyzing Ms. Baptista's contentions regarding the conflict with the hypothetical. The ALJ failed to ask the VE whether her testimony conflicted with the DOT as required by SSR 00-4p.  The error was not harmless because there are potential conflicts between the DOT job descriptions and GED levels and the VE's testimony.  *See Massachi*, 486 F.3d at 1154 n.19 (stating that an ALJ's failure to ask the VE about conflicts with the DOT may be harmless error if there is no conflict or if the VE has provided sufficient support for her conclusion so as to justify any conflicts).  Specifically, the DOT job descriptions potentially conflict with the RFC and hypothetical because they demonstrate the potential for vibration, jarring, dust, and fumes. Additionally, the listed GED levels, particularly the 02 Level of Reasoning Development requiring the ability to follow detailed instructions, may be above Ms. Baptista's level of cognitive function as defined in the RFC and hypothetical.  The VE's only relevant testimony was that there would not be fumes related to the assembler of small parts job.  (A.R. 460.)  This testimony is insufficient to justify all the potential conflicts.  Therefore, I cannot determine whether the ALJ properly relied on the VE's testimony.  *See Massachi*, 486 F.3d at 1154.  As a result, I cannot find that the ALJ's step-five finding that Ms. Baptista can perform work available in the national economy is supported by substantial evidence.  *See id.*

**VI.**    **Lay Witness Credibility**

Ms. Baptista suggests the ALJ improperly limited the weight of the lay testimony provided by Ms. Baptista's friend and neighbor.  (Pl's. Mem. (#11) at 9.)

The ALJ has a duty to consider lay witness testimony.  *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); 20 C.F.R. §§ 416.913(d)(4); 416.945(a)(3).  Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify

regarding the claimant's condition.  *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  The

value of lay witness testimony lies in their eyewitness observations, which may "often tell

whether someone is suffering or merely malingering."  *Id.*  The ALJ may not reject such

testimony without comment, but he may reject lay testimony inconsistent with medical evidence.

*Lewis*, 236 F.3d at 511.  If an ALJ rejects lay witness testimony entirely, he must give reasons

germane to the witness.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

Ms. Baptista's friend Pamela Carpenter indicated that Ms. Baptista was unable to sleep all

night and needed to be reminded to take her medications but was able to fix simple meals, do the

dishes and her own laundry, and went grocery shopping about twice a month.  (A.R. 82-84.)  Ms.

Carpenter stated that Ms. Baptista likes watching TV and crocheting, and saw friends a few times

a week.  (A.R. 85.)  Finally, she indicated that Ms. Baptista can only walk about ten feet before

needing to rest, cannot pay attention well, gets confused easily, and does not handle stress well.

(A.R. 86-87.)

Ms. Baptista's seventeen-year-old neighbor, Joey Winters, testified at the hearing.  (A.R.

443-44.)  He indicated that he helps Ms. Baptista carry her groceries into her house, takes out her

trash, and sometimes helps carry her laundry when her back is sore.  (A.R. 444.)

The ALJ states that he gave the lay evidence limited weight.  (A.R. 37.)  Ms. Baptista

does not indicate what elements of the lay testimony she specifically believes should have been

given more weight.[8]  The ALJ does appear to have accepted some of Ms. Carpenter's testimony

---

[8] The entirety of Ms. Baptista's argument on this point is as follows: "The Plaintiff's
neighbor and others gave lay testimony regarding ADL's [sic].  One stated he helped her with her
laundry, groceries and trash because she could not do it herself.  Others gave testimony about
ADL's [sic] and sleep and Plaintiff's limitations."  (Pl's. Mem. (#11) at 9.)

PAGE 19 - OPINION AND ORDER

as he limited the step five hypothetical to "simple tasks . . . [without] extended concentration or attention." (A.R. 457.) The only restriction that was rejected was Ms. Carpenter's statement that Ms. Baptista could only walk about ten feet before needing to rest. This statement is contradicted by Ms. Baptista herself, who has indicated that she can walk about half a block before becoming short of breath. (A.R. 431.) The ALJ included this limitation in the RFC. (A.R. 30.) This was not error. Otherwise, the testimony relates that Ms. Baptista socializes with friends, and can shop, cook, and do laundry on her own (although her neighbor sometimes helps her carry things up the stairs). Nothing in that testimony is contradicted by the ALJ's decision.

## VII.    Ms. Baptista's Credibility

Ms. Baptista argues that the ALJ improperly rejected her pain testimony related to radiculopathy and scoliosis. (Pl's. Mem. (#11) at 10.)

"Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). In deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (footnote omitted).

> Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged . . . .'" *Bunnell v. Sullivan*, 947 F.2d [341,] 344 [(9th Cir. 1991) (en banc)] (quoting 42 U.S.C. § 423(d)(5)(A)(1988)); *Cotton* [v. *Bowen*,] 799 F.2d [1403,] 1407-08 [(9th Cir. 1986)]). The *Cotton* test imposes only two requirements on the claimant: (l) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom.

*Smolen*, 80 F.3d at 1281-82.

PAGE 20 - OPINION AND ORDER

The ALJ must provide clear and convincing reasons for discrediting a claimant's testimony regarding the severity of his symptoms. *Dodrill*, 12 F.3d at 918; *see also Smolen*, 80 F.3d at 1283. The ALJ must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). But, if an ALJ notes at least "arguably germane reasons for dismissing" testimony, "even if he did not clearly link his determination to those reasons" the ALJ's decision is supported by substantial evidence. *Lewis*, 236 F.3d at 512.

The ALJ may consider objective medical evidence and the claimant's treatment history as well as the claimant's unexplained failure to seek treatment or to follow a prescribed course of treatment. *Smolen*, 80 F.3d at 1284. The ALJ may also consider the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge about the claimant's functional limitations. *Id*. In addition, the ALJ may employ ordinary techniques of credibility evaluation such as prior inconsistent statements concerning symptoms and statements by the claimant that appear to be less than candid. *Id.*; *see also* SSR 96-7p at 5. When the ALJ rejects claimant's subjective statements, he must provide "specific, convincing reasons." *Id.*

Ms. Baptista's back was x-rayed on August 13, 2002, after her motor vehicle accident. (A.R. 300.) The examining physician indicated that there were minimal degenerative disc changes through the thoracic spine and some tilt in Ms. Baptista's neck toward the left, which could reflect a focal spasm. (A.R. 300.) Ms. Baptista's treating physician Dr. Nehren reports that a C-spine was done on May 14, 2004, revealing the same mild degenerative disc disease and moderate degenerative facet changes in the cervical, thoracic, and lumbar spines. (A.R. 359.) The radiologist who examined Ms. Baptista's C-spine reported mild degenerative disc disease,

PAGE 21 - OPINION AND ORDER

moderate degenerative facet changes, and a very mild dextroconvex curve in the lumbar spine. (A.R. 375-77.)  Dr. Nehren diagnosed Ms. Baptista with "left upper extremity radiculopathy" on May 26, 2004.  (A.R. 359.)

The ALJ included "degenerative disc disease" in his list of Ms. Baptista's impairments. (A.R. 29.)  He rejected Dr. Nehren's diagnosis of radiculopathy because the objective tests were normal.  (A.R. 35.)  This is a clear and convincing reason to reject the opinion.  *Cf. Thomas*, 278 F.3d at 957 (An ALJ need not accept a treating physician's opinion if it is "brief, conclusory, and inadequately supported by clinical findings.")  Furthermore, the diagnosis appears to be based solely on Ms. Baptista's subjective complaints, which the ALJ noted that he did not fully credit, as discussed below.  None of Ms. Baptista's treating or examining physicians diagnosed or discussed scoliosis.  Therefore, Ms. Baptista has not met the first step of the *Cotton* test.  *See Smolen*, 80 F.3d at 1282.

Even if Ms. Baptista had met the requirements of the *Cotton* test, the ALJ properly discredited Ms. Baptista's subjective pain testimony.  The ALJ indicated that he gave Ms. Baptista's subjective testimony limited weight for the following reasons: examining physician Dr. Holland indicated that Ms. Baptista tended to agree with anything that was asked of her, Ms. Baptista said that nothing made her pain better but then exhibited drug seeking behaviors, there were few objective medical findings supporting Ms. Baptista's allegations of pain, she was not compliant in taking her medication, she failed to stop smoking despite suffering from asthma, she may have worked under the table has a house cleaner so as to avoid having Social Security notice her earnings, and her earnings record indicates that she has the intellectual and adaptive capacity to perform significant work.  (A.R. 31, 33-35, 37.)

PAGE 22 - OPINION AND ORDER

Ms. Baptista specifically challenges the ALJ's discussion of her alcohol use, her failure to take medications she indicated frightened her, and her failure to stop smoking, as improper bases upon which to reject her credibility.  (Pl's. Mem. (#11) at 10.)  It was error to consider Ms. Baptista's explained failure to take certain medications and her failure to stop smoking. However, the error was harmless because the ALJ's decision to discredit Ms. Baptista's testimony was based upon the above listed clear and convincing reasons not challenged by Ms. Baptista. *See Dodrill*, 12 F.3d at 918.

## CONCLUSION

For these reasons, the Commissioner's decision is REVERSED and the case is REMANDED FOR FURTHER PROCEEDINGS consistent with this opinion.

IT IS SO ORDERED.

Dated this  5th   day of December, 2008.


/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge

PAGE 23 - OPINION AND ORDER